and Mr. Hawley, are you there on the phone? Yes, Madam Clerk. Great. This is Judge Graber, and I'm calling the last case on the morning calendar, Silvernail v. Armstrong, and we'll begin with Mr. Darling. Thank you, Your Honor. May it please the Court, my name is Lafcadio Darling. I'm pro bono counsel for Appellant Reggie Silvernail. The Court, before you begin, and I won't count this against your time either, I do want to thank you for participating in the pro bono program. It's of great assistance to the Court, and we appreciate the enormous time and effort that counsel put in on these cases. Thank you, Your Honor. It was a good experience. This Court appointed me to look at Mr. Silvernail's case, to evaluate its merits, and to argue his position. And I took my task seriously. As you suggested, Your Honor, I spent quite a bit of time on it. And after doing so, I've concluded that Mr. Silvernail's appeal does have merit, and his conviction shouldn't stand. Counsel, I want to suggest a way to look at this case that neither party has really put forward, but that made sense to me as I was reading the information that was presented to us. And I wonder if you can comment on this. It appears to me most likely that what both juries found was that this defendant's role in the crime was in helping to move the victim to the car, and from the car to the bluff, and helping to send him over the edge to where he eventually froze to death, as the medical evidence showed. If that's what the jury found was his role in the crime, as seems most likely from the evidence, why isn't that fully consistent with both verdicts and everything that happened? In other words, they found that he wasn't one of the people who kicked him in the head, but he did help to kidnap him and send him to his death in the cold. Why doesn't that just track easily through both trials? Well, the problem with that is that it does make sense when you just sort of look at the facts. But what the problem was, he's charged with something. Everything he's charged with requires specific intent. Well, he was acquitted of first-degree murder. He wasn't retried for first-degree murder. He was acquitted of assault. That is, the kicking piece of this thing, and the shooting. And he didn't do that, and he wasn't retried for that. So I don't see where the problem is. The problem is in the – and this is jumping right to my first point. This case is very complicated, and I, of course, had to just select a few things. But my first point is that you can't separate the first verdict from what happened after the first verdict, the findings of the trial court and the post-conviction motions. But the trial court doesn't make findings. The trial court analyzes a legal issue. It's the jury that made the findings in the first trial. And all the jury found was that he was not guilty of the assault and not guilty of the first-degree murder, that he was guilty of second-degree murder and of kidnapping. And he secured a reversal of that on appeal. But why isn't it just simply that he gets retried for the things that he was convicted of the first time? Exactly. You're precisely right, Your Honor. But he wasn't tried for the same things a second time. The only thing that saved the first verdict from hopeless ambiguity was the trial court issuing the order. And I call it findings, but I understand your point. The trial court issued the order saying, no, no, we don't have an inconsistency here, we don't have an ambiguity here, because he didn't have specific intent, fine. It's felony murder, which is second-degree murder, and it's apprehension-based kidnapping. But why is it that he doesn't – that the trial court's analysis of the verdict isn't binding, is it? What difference does it make that the trial court had one way to look at the evidence? Why isn't my way of looking at that evidence and that verdict just as valid? And if it is, then he's being retried for exactly the same thing. Well, his jeopardy – I think his jeopardy has to attach to the trial court's conclusion, because what choice does Silvernail have? He's got to rely on the – he says, this conviction is bad. This verdict is bad because it's inconsistent. What if the trial court, given no reason at all, just said, well, I don't think it's inconsistent, you lose? I think we have a different – If there's – well, I guess my question is, why is that any different? What is there that's binding about what the trial court chatted about in reaching the conclusion that the verdicts were consistent? Well, I think it's more than – I think it was more than chatting, because the – there was a serious problem with this verdict that was raised by Silvernail's attorney. And the trial court resolved that problem by saying, it's okay. We have felony murder and the uncharged kidnapping. That's the conviction. Fine. It's reversed for evidentiary reasons. And I'll jump right down to my last point, which is a clarification that we're not saying they couldn't have retried him. They could have retried him for those offenses that had been reversed on the first appeal, but they didn't. They relitigate the intent issue. They relitigate the cause of death. And then he's convicted on second-degree murder and on the felony murder or on the apprehension-based kidnapping. Is it your position that in a second trial for the same crime, the government has to rely on the same evidence? It's my position that they cannot relitigate something that's been resolved in Silvernail's favor. That wasn't exactly my question. I'm sorry. Can the government, in trying the same crime again, rely on different or new evidence in support of the same criminal charge? I think they probably can, but if it's collateral estoppel. What's the problem with having evidence about the cause of death in the second trial? Well, it's collateral estoppel. Even if they have great evidence that surfaces later, if something's collateral estoppel, you apply the collateral estoppel test, and they can't revisit it. I mean, that's what Double Jeopardy says is that if you, the first time around, if they resolve an issue in your favor. Well, everything hinges on your theory that something other than first-degree murder, no, and assault, no, was resolved in the first trial. If we disagree with you about that, the rest falls away. Correct. It's necessary. The first jury necessarily decided, to quote the case law, that Silvernail did not have the necessary intent to harm Gilruth. That's what led to the whole post-conviction mess, and the causation issue as well. Because of that issue was necessarily decided, then you can't relitigate that issue. And you don't need to ---- If we were to hold that the only thing that the first trial necessarily decided in his favor was that he didn't specifically intend to cause the death, that is, he didn't have the first-degree murder, I want this guy dead, and that he didn't kick him in the head or shoot him, if that's all that was decided in his favor in the first trial, then everything that happened in the second trial is fair game. Not if ---- well, but the problem is they go back to the intent issue. In order to show the other, the non-felony murder forms of second-degree murder, they needed to show specific intent to harm Gilruth. And they couldn't because that was already resolved in the first ---- Well, that's why I said it the way I did. If he didn't specifically intend to kill him doesn't mean that he didn't specifically intend to hurt him. Well, that was the problem. The attorney at the first trial said, hey, if Silvernail didn't assault the guy, how on earth could he commit second-degree murder? By causing him to go over the edge of a bluff and lie in the cold until he died. But the beating was the cause of the death. No, that's my point exactly, and that's why I started where I started. It seems to me if the cause of death is freezing to death, then everything flows from that, and everything works okay. Well, the way it was litigated at the trial was they said the cause of death was the cold, but for the purpose of the crime, the cause of death was the beating because it interfered with his ability to produce heat and get out of the cold. So the way they framed it at the first trial, and none of us were there to control it, but the way they framed it was the beating was the cause of death. The participation in the beating, whether it's as an accomplice or as a primary assailant, is a necessary part of the criminal culpability and the cause of death. And in that analysis, I had a little problem with that. The events occurred in a parking lot, beating up, whatever. They throw him in the van, and they drive off, according to the defense, ostensibly go to the hospital. They don't go to the hospital. They come along the side of the road, kick him off, push him out of the car. Now, at the point that they kick him out of the car in the cold, isn't that a new act of the crime? In other words, I understand he's now disabled, he's incapacitated, but the act that caused his death was pushing him out of the car. I agree with you, Your Honor. Unfortunately, that's not the way that they framed it. They said the way that they seemed to frame the issue at the first trial was the beating equates to the cause of death. I agree, as a practical matter, it seems like. That's the first trial. What about the second trial? Well, the second trial, they – I mean, I believe they used the same framework. But isn't that important if we're going to have this double jeopardy discussion, what they framed in the first trial and what they framed in the second trial? Well, I think that, yes, I think the collateral – I really think this is more of a collateral estoppel issue because we have this – we have necessary issues resolved in Silvernail's favor. Same evidence first time, same evidence second time. Correct. Yes. And same litigation, same dispute first time resolved in his favor, same dispute second time resolved against him. And I think that's the point of collateral estoppel is they say time and again, you look at all the way back to Ash, but you look at McLaurin and Romeo and other Ninth Circuit case law, and they say you don't need an explicit acquittal. If it's obvious from what the jury did or didn't do that they resolved this issue in his favor, i.e., Silvernail didn't participate in the beating because he wasn't an assault defendant, then you can't go back. But he participated in the kidnapping and the dumping the guy over the bluff. He – well, he didn't – And that was not found in his favor in trial number one. Well, the way that it was resolved post – they said kidnapping. They didn't know which one, the charged or the uncharged. And the Silvernail's attorney said it can't be the charged one. It can't be assault-based kidnapping because that would have required the intent that would have led to assault. The Court said you're right, so we're going to find the apprehension – Kidnapping is the kidnapping that occurred when he was forced into the car and driven away. And your client was never acquitted of that act in trial number one. Correct. Apprehension – that's apprehension-based kidnapping. That wasn't litigated. It's actual kidnapping. It's taking him from one place to another. Right. But that – I mean, that's an important distinction because they charged him with one variety of kidnapping. And they – that – he was acquitted of that brand of kidnapping. The apprehension-based was not charged and was not litigated. Not acquitted of kidnapping in the first trial. He was acquitted of assault and first-degree murder and convicted of kidnapping in the first trial. Correct. But the trial court found that he had to have been – But that's why – if we are not bound by the trial court's analysis in the first trial, then – I mean, why would we be required to analyze the record of the first trial or the verdict in the first trial the same way that that trial judge did? Because I think – because that first trial judge's decision was what defined what the parties did in the second trial. The jury – the jury verdict defined what the first trial did. But the jury verdict was ambiguous. And the only reason that a new trial wasn't granted to Silvernail after the first verdict was based on this construct. He was – Silvernail was forced to rely on this construct of it's felony murder and the uncharged kidnapping, pal. That's what you were convicted of. I know you have these great arguments about intent. Too bad. Felony murder and apprehension-based kidnapping are what you're on the hook for. That's what was reversed by the court of appeals. And that's what they should have re-litigated, and they didn't. They re-litigated the beating issue. And they were precluded from doing so. If they wanted to, they could have gone back to the drawing board and re-litigated the issues that were preserved. I'm not saying all the charges were precluded. They certainly weren't. I'm saying that the issues that required the specific intent, that required the assault, the charged offenses, and the lesser-included second-degree murders, those were the ones they weren't allowed to revisit. And it makes sense here because the new – we had new attorneys on both sides and a new judge. And I can completely understand the Attorney General of Alaska looks at the jury verdict, says, oh, okay, he was convicted of these crimes, he was acquitted of these, we'll just do it again. They apparently didn't know or ignored the entire fight afterward where the judge said, no, no, we're talking about felony murder and we're talking about apprehension-based kidnapping. If they restricted themselves to those crimes and litigated those crimes, his convictions would be fine. But they violate the Fifth Amendment because they go back to the same assault issues, the same intent issues, the same causation issues that had to have been resolved in his favor because of the assault acquittals. And that's the basis for his current convictions. Okay, Counsel, you have used up your time, but we used up a lot of it for you, so we'll give you some rebuttal. Mr. Hawley? Thank you, Your Honor. I may have pleased the Court. I want to thank you very much for letting me appear telephonically. You're welcome. I have four points, not necessarily in order of importance. The first one would be that reasonable persons could have, or reasonable jurors on the first juror could have acquitted because the state failed to prove dangerous instrument. Second of all, the defendant cannot show, as he must, that the jury did not compromise. Three, collateral estoppel doesn't apply. Ash talks about any future trial. It doesn't talk about the same trial. And four, one or more jurors, exactly what Your Honor's question implies, as you began with opposing counsel, one or more of the jurors at the first trial could have found the defendant put the victim in the van with intent to assault him, therefore he's guilty of kidnapping. Throwing him over the cliff satisfies any of the four theories of murder in the instruction. It is the defendant's burden, of course, to show that the issue was decided in the first proceeding by all the jurors. Under my reading of Sound of Maria, in any event, he hasn't made that showing. I would like to emphasize one point. It's that Judge White's finding was not that the jury did make a finding. It was, in the explicit languages, that the jury could have found that Silvernail was an aider and abetter, using the terms aider and abetter as shorthand. So if there are three or four different ways to reconcile the verdict in the first trial, and the trial judge picks one of them as saying, well, this is one way you could reconcile this, are we bound by that? Absolutely not. Chereau requires a court to examine the preclusive effect. De Novo is, under my reading of it, anyway. And Judge White, even if you look at what Judge White said as a finding, nothing he said precluded any other finding or conclusion. And with regard to my argument that the defense argument that the decision not to give fourth-degree assault instruction was a leak, they're arguing that that is a factual finding. And my response, factual finding that no dangerous instrument was used, my response would be that Judge White did not address the definition of dangerous instrument or specific physical injury, whether a saft or boots were used under the circumstances that were capable of causing death or serious physical injury. And the dangerous instrument was a necessary element of first-degree and third-degree assault. Dangerous instrument focuses on anything which, under the circumstances as which is used, is capable of causing death or serious physical injury. Serious physical injury is physical injury caused by an act performed under circumstances that create a substantial risk of death. Testimony was from a pathologist in Holland that the victim was hit six or eight times with a saft, not 80 times or 20, not even 20 times. A boot or a saft is not like a gun. A boot or a saft is not like a knife. Under the circumstances used, the jury could reasonably find that there was no serious physical injury, that it was not a dangerous instrument. The defendant, through the proof, through the cross of the pathologist, I mean the pathologist said Silvernail would have lived if he wasn't thrown over the cliff. The victim would have survived if he'd been taken to the hospital. The victim was not in shock from loss of blood. Silvernail's knuckles were not skin. The saft hit in the victim's hair, so far as the pathologist could tell. Silvernail had on soft-toed boots, it appears, from the evidence the jury heard. Also, I'd like to point out that Silvernail's trial attorney made essentially this argument, and it's at page 15 of volume one of the record. He argued in moving for a new trial, the jury could not have found that Silvernail acted with intent to cause serious physical injury or that he knew his conduct was substantially certain to cause death because the jury acquitted the defendant of assault in the first and third degree, both of which require the use of a dangerous instrument in an assault of Kurt Gilruth. That, roughly translated, is what I'm saying here today. And I think it's been pointed out, and I won't belabor the point that some jurors could have found him guilty in the manner Your Honor described at the beginning of the questioning of both kidnapping by putting him in the car and throwing him over the cliff. The defendant, I would submit, can't show the verdict. The jury didn't compromise. After a day, day and a half of deliberations, the jurors sent out a note saying they were completely deadlocked. Seven minutes later, they sent out a question asking if the apprehension-based theory was viable. An hour later, assuming they had lunch, the jury announces a verdict. The defendant can't negate that that was not a compromise. With regard to my argument that collateral estoppel is not applicable. Are you talking about the first trial or the second trial? Everything I've been talking about is the first trial. And my argument with regard to collateral estoppel not being applicable is, frankly, it's summarized in the California Supreme Court decision in Santa Maria. And I'd be happy to answer any further questions. Does anyone on the panel have any further questions? We have no further questions, and we thank you, Mr. Hawley. Mr. Hawley, we'll give you a couple of minutes for rebuttal since we took up a lot of your air time. Thank you, Your Honor. I'll try to be brief. Something that we haven't talked about, but which was talked about in the briefing, is that in order to convict, to uphold a conviction, for a conviction to be valid, a coherent theory of guilt has to be presented to the jury. The apprehension-based kidnapping was never presented to the jury as a coherent theory. The instruction was given. But the case, the Dunn case and the Cola case, both are clear that you can't allow, you can't for the purposes of a habeas challenge or an appeal, assume that the jury convicted them of something that wasn't presented. And so we can't be Monday morning quarterbacks and say, oh, well, wait a second, something was floating out there, and that may fit with what we know of the facts. It wasn't presented by the parties, and therefore it can't form the basis for his current convictions. And that's the problem with the apprehension-based kidnapping. That wasn't precluded. That was okay. The problem with that is that they didn't litigate it. They didn't charge him with it. Point number two, I do think, I was thinking about the judge's commentary and what do we call it, a finding, or how we characterize it, whether this court's bound by it. I think it should enjoy the presumption of correctness that the habeas statute affords. This is one of those unusual situations where the presumption of correctness helps Silvernail because we have the state court saying, yes, this is how I'm going to resolve this problem for you, Silvernail, and the convictions are going to stand based on my resolution. I was just looking at the Carbudio case, which I don't think I submitted. I'll submit it as 307 F3rd 957, and a judge accepts insanity stipulation. And the court goes into detail as to what the judge, the trial judge thought and what he was, his motives were, and that the parties were relying on what the judge did. I don't think it's any different here. Silvernail is bound to what the trial court found. And that's why he's, that's why his convictions stood. The final point I wanted to make is I just don't think the State's collateral estoppel argument makes sense. If they're correct, you have an issue that's resolved in the defendant's favor in Trial 1. The trial's reversed for some other reason. They, it's fair game. They're allowed to go back and start everything anew, regardless of what the first jury did, just because something was reversed. I don't think that's the rule of collateral estoppel at all. I think once a jury resolves it in the defendant's favor, it can never be revisited. The case all seems clear on that point. Thank you. Thank you, counsel. The case just argued is submitted. We thank you both for your arguments. And again, we are deeply grateful to all the lawyers who are willing to take cases  It's really great assistance. Thank you, Your Honor. With that, we are adjourned for this morning's calendar. Mr. Hawley, you can hang up. Thank you. Thank you. Thank you. Thank you.
judges: Brunetti, Tg Nelson, Graber